CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
March 31, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARK RAZO, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 7:21-cv-516 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| J.C. STREEVAL, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
| Respondents. | ) | |

Mark Razo, a federal inmate proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, while housed at the United States Penitentiary ("USP") in Lee County, Virginia. Razo is challenging a disciplinary conviction that resulted in, *inter alia*, the loss of good conduct time ("GCT"). Respondents filed a response to Razo's petition, which the court construes as a motion for summary judgment,[1] and this matter is ripe for disposition. (*See* ECF No. 5.) For the following reasons, the court will grant Respondents' motion.

I.

On July 30, 2020, Corrections Officer J. Clark filed disciplinary charges against Razo for possessing narcotics and disposing of evidence during a search. (*See* ECF No. 1-2, at 3.) In the Incident Report ("IR"), Officer Clark stated that, earlier that day, he had conducted a visual search of Razo and ordered him to remove his pants, and that "Razo responded by reaching in the rear of his pants, pulling toilet paper and plastic out of his buttocks and quickly stuffing

---

[1] Although Respondents frame their response as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), both Petitioner and Respondents rely heavily on materials outside of the pleadings to support their arguments. When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

the items in the shower drain."[2] (*Id.*) Senior Officer Specialist Vinzant assisted Officer Clark with the visual search and also observed Razo "remove a piece of toilet paper and plastic from his buttocks and quickly throw it in the shower drain." (ECF No. 5-1, at 7.) Officer Clark reported that, when he asked Razo what the substance was, Razo stated, "I guess we will see if you get it out." (ECF No. 1-2, at 3.) Razo was then removed from the shower and placed into another shower. (*Id.*) Once he was secured, Clark "utilized a wire to pull the toilet paper and plastic bag out of the shower [] drain." (*Id.*; *see also* ECF No. 5-1, at 7.) In the bag, Clark found "16 full orange film strips that were marked 'N12' and one small triangle film strip." (ECF No. 1-2, at 3; ECF No. 5-1, at 7.) Clark reported that the evidence was taken to the Lieutenant's office and the substance was identified as Buprenorphine "Suboxone 12mg" by a pharmacy technician. (ECF No. 1-2, at 3; *see* ECF No. 5-1, at 8.) After inspecting and identifying the strips, the pharmacy technician photographed them, and staff completed a chain of custody log. (*See* ECF No. 5-1, at 9−10.)

Later that day, Lieutenant S. Kenyon investigated of the charges and provided advanced written notice of the charges to Razo by delivering a copy of the incident report to him.[3] (*See* ECF No. 5-1, at 5–6; Decl. of S. Kenyon ¶¶ 7−9 [ECF No. 5-2].) Lt. Kenyon avers

---

[2] The IR erroneously reported the "Date of Incident" as March 20, 2020 on one part of the form (*see* ECF No. 1-2 at 3, Section 4), but in the "Description of Incident," the report twice stated that the incident occurred on July 30, 2020, including in the title of that section and in the narrative of that section (*see id.* at Section 11). During an investigation of the charge later that day, Lt. Kenyon noted the date error and made a "pen and ink change" to correct the date and initialed his change. (Decl. of S. Kenyon ¶ 11 [ECF No. 5-2].)

[3] It appears that Razo was initially given a copy of the IR that contained the incorrect date noted in Section 4. (*See* ECF No. 1-2, at 3.) Razo was later given a copy of the "pen and ink" corrected version of the IR on August 5, 2020, at his disciplinary hearing on the charges. (Decl. of C. Craft ¶ 3 [ECF No. 5-3].) At the time Razo was given the corrected version, the Disciplinary Hearing Officer advised Razo that he could "have an additional 24 hours in which to prepare a defense to the charges," but Razo "chose" to waive the additional 24-hours and to continue with the disciplinary proceedings. (*See* Decl. of J. Brown ¶ 5 [ECF No. 5-1]; Decl. of C. Craft ¶ 5; ECF No. 5-1, at 17.) Razo states that the Disciplinary Hearing Officer "pushed some type of 24-hour waiver

that, during his investigation, Razo declined to make a statement, did not request any documentary evidence, and did not ask that video footage be reviewed. (Decl. of S. Kenyon ¶¶ 9–10; ECF No. 5-1, at 6.) As a result of the investigation, Lt. Kenyon referred the disciplinary charges to the Unit Discipline Committee ("UDC"). (ECF No. 5-1, at 6.)

On July 31, 2020, Unit Manager R. Mullins conducted a UDC proceeding. Mullins avers that Razo "did not request any documentary evidence and did not ask that video footage be reviewed."[4] (Decl. of R. Mullins ¶ 5 [ECF No. 5-4].) As a result of the UDC proceeding, Mullins referred the disciplinary charges to the Disciplinary Hearing Officer ("DHO") for a hearing. (ECF No. 5-1, at 5.) That same day, Mullins advised Razo of the referral to the DHO and of his rights at the disciplinary hearing.[5] (*Id.* at 12–13.)

A disciplinary hearing was held on August 5, 2020, for which Razo was present. DHO J. Brown avers that at the hearing, Razo did not "raise any issue concerning the discipline process" and did not request a staff representative or any witnesses to appear on his behalf. (Decl. of J. Brown ¶ 8 [ECF No. 5-1].) DHO Brown also avers, and the DHO Report reflects,

---

at [him] and told him that if he didn't sign [the waiver,] he would lock the whole unit down." (ECF No. 1-1, at 6.) Razo argues that he signed the waiver under threat. The Disciplinary Hearing Officer states that Razo signed the form "voluntarily" and that he "was not threatened or coerced into signing the waiver form." (Decl. of J. Brown ¶ 6; *see also* Decl. of C. Craft ¶ 7.) Regardless of whether Razo felt pressured into signing the waiver, the court finds that the initial IR with the typographical error in one section (but correct date twice elsewhere, including in the description of the incident) was sufficient notice of the charges against Razo for federal due process purposes. *See e.g.*, *Saldana v. Ortiz*, No. 20-6268 (CPO), 2022 U.S. Dist. LEXIS 73765, at *13−14 (D.N.J. Apr. 21, 2022) (concluding a typographical error listing two different offense dates in the IR did not violate due process and collecting other cases holding the same). The court notes that a violation of Bureau of Prisons procedures is not in and of itself a violation of federal due process rights. *See Hodge v. Rivers*, No. 7:20cv570, 2021 U.S. Dist. LEXIS 1532, *6 (W.D. Va. Jan. 6, 2021).

[4] UM Mullins states that had Razo requested any documentary evidence or asked that video footage be reviewed, he would have noted it in Section 17 of the IR. (Decl. of R. Mullins ¶ 5.) Instead, that section reflects that Razo made "[n]o comment." (ECF No. 5-1, at 5.)

[5] Notably, the Disciplinary Hearing Notice listed the offense date correctly as July 30, 2020. (ECF No. 5-1, at 13.)

that Razo did not present any documentary evidence and did not request that any video evidence be reviewed.[6] (*Id.* at ¶ 10; ECF No. 5-1, at 14; ECF No. 1-2, at 7.) At the hearing, Razo denied committing the disciplinary offenses. (ECF No. 1-2, at 7; ECF No. 5-1, at 14.) In addition to the IR, which included Officer Clark's statement, and the investigation, the DHO considered a memorandum from the pharmacy technician identifying the substance on the strips, a photograph of the strips, a memorandum from Senior Officer Specialist Vinzant who witnessed the incident, the chain of custody log, and an administrative detention order. (ECF No. 5-1, at 15.) After considering the evidence, the DHO determined that Razo was guilty of the disciplinary offenses of possessing narcotics/drugs and attempting to dispose of an item during an attempted search.[7] (*Id.* at 15–16.) As a result of the two disciplinary convictions, the DHO imposed a total loss of 82 days of good-conduct time, forfeiture of 56 days of non-vested good time, loss of telephone privileges for 270 days, loss of commissary privileges for 180 days, loss of email privileges for 180 days, and loss of "MPlayer" privileges for 90 days. (*Id.* at 16.) A DHO Report stating the reasons for the DHO's finding of guilt was prepared on December 15, 2020, and a copy of the report was delivered to Razo on January 28, 2021. (ECF No. 1-2, at 9.)

Razo filed multiple administrative complaints and appeals contesting the date error in Section 4 of the IR and its subsequent correction, as well as the accuracy of the drug

---

[6] DHO Brown states that there was no documentation that Razo requested video be reviewed at any stage of the proceedings and Razo also never requested that video be reviewed at the disciplinary hearing. (Decl. of J. Brown ¶ 11.) Moreover, Special Investigative Agent Jamie Canfield avers that he is familiar with the video camera system at USP Lee and that "video cameras do not record body searches in showers so there would have been no video footage of the incident." (Decl. of J. Canfield ¶¶ 3, 7 [ECF No. 5-5].)

[7] The attempted disposal charge was amended from a disposing of evidence during a search charge.

identification. (*See* ECF No. 1-2, at 11, 16, 21, 26.) Razo made no mention of video footage in either of his first two appeals. (*See* ECF No. 1-2, at 11, 16.) It was not until his third appeal, filed more than nine months after his hearing, that Razo alleged for the first time that "review of the cameras will prove that I didn't dispose of anything and that the incident report is erroneous" and that he "asked for staff assistance [and] a review of cameras and evidence [and] was denied." (*Id.* at 21.)

In his habeas petition, Razo asks the court to "expunge" the "disciplinary incident" and "reinstate all good time, privileges, etc." that "were taken as a result of the invalid incident report . . . and DHO hearing." (ECF No. 1-1, at 1.) In support of his request, Razo argues that he "was erroneously given" the IR that contained an "invalidating date" and "no signature from the reporting employee."[8] (*Id.* at 6.) He also asserts that "when UDC came and visited him for the original IR, [Razo] asked for an investigation, as such to include camera footage."[9] (*Id.*) Razo alleges that, at the disciplinary hearing, the DHO "decided to thwar[t] the [BOP's] Program Statement policy" by correcting the erroneous incident date himself and "apparently" signing it as the reporting employee. (*Id.*) He further claims that he "informed the DHO that he wanted an investigation/er to review the camera footage and talk to the officers[,] but the DHO said he didn't do any of that." (*Id.*)

---

[8] The court notes that Razo provides a copy of the "original" IR he "was served," and although it has the incorrect date in Section 4 of the form, it does include the signature of the reporting officer. (ECF No. 1-2, at 3.) There is no copy of the IR that is allegedly missing the reporting officer's signature in the record before the court.

[9] It is not clear whether Razo is alleging that he specifically asked for video footage or whether he believed a review of video footage would necessarily be included in the requested investigation.

- 5 -

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on unsupported speculation or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Anderson*, 477 U.S. at 252; *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v.*

*Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). When the punishment does not cause the original sentence to be enhanced, protected interests will generally be limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

While prisoners are afforded rights of due process, they are necessarily balanced with the interests of institutional security. *See Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. To satisfy the constitutional requirement of procedural due process, a disciplinary proceeding must be accompanied by: (1) advance written notice of a claimed violation at least 24 hours before any disciplinary hearing; (2) the ability of the prisoner to call witnesses and present documentary evidence at the disciplinary hearing; and (3) a written statement of the evidence relied upon by the factfinder and the reasons for the disciplinary action taken. *See Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016) (citing *Wolff*, 418 U.S. at 563–66). To provide constitutionally sufficient substantive due process, a disciplinary offense finding must be "supported by some

evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). The Supreme Court has explained that the only "relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56 (emphasis added). In applying this deferential approach, courts need not engage in a second "examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455.

Here, Respondents are entitled to judgment as a matter of law because no reasonable jury could find that Razo was denied due process in connection with this disciplinary charges and hearing. First, it is readily apparent that Razo received constitutionally adequate procedural due process. It is undisputed that Razo received advanced written notice of the claimed violation more than 24 hours before his disciplinary hearing. Plaintiff admits, and the record shows, that he was provided with a copy of the IR six days before his disciplinary hearing and that, five days before the hearing, Unit Manager Mullins came to his cell and "advised [Razo] of his rights" concerning the IR. (*See* ECF No. 1-1, at 2; ECF No.1-2, at 5; Decl. of S. Kenyon ¶¶ 7, 9.) The IR offered Razo sufficient written notice of the disciplinary charges in advance of the hearing. *See Chestnut v. Lue*, No. 7:19-CV-00430, 2020 WL 201056, at *4 (W.D. Va. Jan. 13, 2020) (finding petitioner received constitutionally sufficient notice where he was given a copy of an incident report three days before his disciplinary hearing); *Thompson v. Zych*, No. 7:15CV00444, 2016 WL 4532417, at *3 (W.D. Va. Aug. 29, 2016) (holding it was "clear that [the petitioner] was given written notice of the charges more than 24 hours before the rehearing as it is undisputed that he received a copy of the incident report . . . prior to the first hearing"); *Black v. Stansberry*, No. CIV.A. 3:07CV429, 2008 WL 501272, at *3 (E.D. Va. Feb.

21, 2008) (finding "[p]rison officials gave [Petitioner] an advanced written notice of the charges via the Incident Report").

Despite Razo's protests, the fact that the original IR mistakenly listed the date of the incident as "03/30/20" in one section of the IR form and listed the correct date—July 30, 2020—elsewhere in the report does not nullify the sufficiency of the notice he received. *Cf. Byers v. Adams*, No. 1:05CV01226(JCC/TCB), 2006 WL 5781568, at *3 (E.D. Va. Aug. 9, 2006) (finding petitioner's claims that the incident report was "unlawfully rewritten" after he received an initial copy of the report "does not raise a constitutional issue" because *Wolff* requires only that he "receive written notice of the charges in advance of the disciplinary hearing"). In *Byers*, the district court found a § 2241 petitioner had not shown his right to procedural due process was violated by the fact that the original incident report he received was later rewritten to change the charge against him from "being in an unauthorized area" to "escape from an open institution." *Id.* The court emphasized, because the petitioner received advanced written notice of the escape charge more than 24 hours before his hearing, he had not shown any constitutional violation. *Id.* (noting that petitioner "d[id] not allege that he was unaware of the charge, just that there was no authorization to rewrite the report").

In this case, as in *Byers*, Razo does not contend that the typographical error actually confused him about the date of the incident in question or the basis for the charges against him, and Razo's own admissions and the averments of Lt. Kenyon confirm that, had he any questions or confusion concerning the date of the incident for which he was being charged, he could have raised them to Kenyon at the time he delivered the IR and advised Razo of his rights. Moreover, the error was corrected in the copy of the IR that was delivered to Razo on

July 30, 2020, by Lt. Kenyon, still well in advance of the August 5 hearing. The record plainly shows that Razo received constitutionally sufficient notice of the charges against him, and Razo cannot show that his due process rights were violated on this basis.

Next, Razo does not meaningfully dispute that he had the ability to call witnesses and present documentary evidence at his disciplinary hearing. Instead, he claims only that he sought but was denied the opportunity to review camera footage of the incident. (*See* ECF No. 1-1, at 6–7.) The Fourth Circuit has recognized that *Wolff*'s procedural due process guarantees include "a qualified right to access and compel consideration of any video surveillance evidence of the incident giving rise to [the] loss of good time credits." *Lennear v. Wilson*, 937 F.3d 257, 279 (4th Cir. 2019). However, in so deciding, the Fourth Circuit explicitly observed that, if the reviewing court determines "that Petitioner did not timely request such evidence, or if the evidence did not exist, then no violation of Petitioner's procedural due process rights occurred." *Id.*

Such is the case here. The DHO report and the declaration of DHO Brown stand in direct contradiction to Plaintiff's unsworn assertion that he asked that video evidence be reviewed. (*See* Decl. of J. Brown ¶ 11 ("Petitioner never requested at the DHO hearing that video be reviewed, nor was there any documentation that he requested video be reviewed at any stage of the proceedings"); ECF No. 5-1, at 14 (DHO report stating that Razo did not "request video evidence at any stage of the discipline process").) Generally, a party's unsworn allegations are insufficient defeat summary judgment. *See Williams v. Gilbert*, No. 7:22-CV-00668, 2024 WL 1261211, at *4 (W.D. Va. Mar. 25, 2024); *Johnson v. Duty*, No. 7:22-CV-00340, 2024 WL 410036, at *4 (W.D. Va. Feb. 2, 2024), *aff'd*, No. 24-6193, 2024 WL 4274470 (4th

- 10 -

Cir. Sept. 24, 2024). And here, Razo's self-serving statements in his brief that he requested video footage before and/or during his hearing do not create a genuine dispute of material fact in light of Respondents' proffered evidence that Razo never made any such request. *See Bliss v. Allenwood*, 558 F. App'x 158, 160 n.4 (3d Cir. 2014) (rejecting due process claim based on failure to provide video footage where "none of [the petitioner's] documentary evidence establishe[d] that he requested that the footage be presented at the hearing or otherwise reviewed by the DHO"); *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) (acknowledging that, if the petitioner failed to request video evidence "either before or at the hearing, then the [respondents] could not have denied him due process by not considering the request"); *see also Donahue v. Grondolsky*, 398 F. App'x 767, 771 (3d Cir. 2010) (finding request for exculpatory evidence raised for the first time on appeal "was too late for any prison official at the hearing level to respond appropriately to the request").

In any event, the evidence shows that the video footage Razo claims to have sought did not exist. (*See* Decl. of J. Canfield ¶ 7 ("The video cameras do not record body searches in showers[,] so there would have been no video footage of the incident.").) The sworn statements offered by Respondents are not overcome by Razo's unsupported assertions in his reply brief that, "by way of discovery and interrogatories, he will show that camera footage is available of the incident" and that "it will show enough to prove [his] position" even though "it may not show[] the Petitioner in the shower." (ECF No. 11, at 3–4.) Razo admits that any footage would not show the body-cavity search performed in the shower but insists that video footage would contradict Officer Clark's testimony about when Razo removed his pants. (*See id.*) But Razo's insistence that evidence of this lone detail would unravel the entire basis for

his disciplinary conviction is misguided. It is apparent from DHO Brown's report that the timing of the removal of Razo's pants was immaterial to the imposition of sanctions for Razo's possession of narcotics and/or disposition of evidence during a search. (*See* ECF No. 5-1, at 15.) Instead, the DHO report emphasizes the fact that a substance was taken from Razo during the search, that Razo tried to dispose of the substance down the shower drain during the search, and that the substance was positively identified as Buprenorphine "Suboxone 12mg." (*Id.*) Consequently, any failure to review video evidence showing when Razo removed his pants is harmless and cannot support a due process claim. *See Jones v. Bolster*, No. 1:19CV479 (LO/MSN), 2020 WL 809375, at *4 (E.D. Va. Feb. 14, 2020) ("[I]f the due process violation was harmless, respondent is entitled to summary judgment.") (citing *Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir. 2004)).

Under these circumstances, no reasonable jury would find there was a due process violation based the failure to provide Razo with the video evidence. *See Lennear*, 937 F.3d at 279; *Anderson v. FCC Coleman-USP II Warden*, 649 F. App'x 730, 731 (11th Cir. 2016) (holding that "although [the petitioner] argues that his due process rights were violated by the BOP failing to turn over video of the incident, there was no due process violation since the record indicates that video of the incident does not exist"); *McKoy v. Fox*, 587 F. App'x 802, 804 (5th Cir. 2014) (holding petitioner had not demonstrated a due process violation based on the DHO's failure to provide video footage where respondents' evidence showed that no video recording of the incident existed).

Razo received advanced written notice of, and he was given the opportunity to call witnesses and present documentary evidence at the hearing. Moreover, the DHO issued a

- 12 -

written statement of the evidence he relied upon and the reasons for his findings.[10] Accordingly, no reasonable jury could find that Respondents violated Razo's procedural due process rights. *See Dilworth*, 841 F.3d at 253. The court will therefore grant summary judgment to Respondents on Razo's procedural due process claims.

Finally, to the extent Razo challenges the substantive basis for his disciplinary convictions and related penalties, this argument also fails. It is clear from the evidence in the record that there was "some evidence" to support the DHO's finding of guilt, including, *inter alia*, officer testimony, a memorandum submitted by a medical technician, and a photograph of the substance discovered during the search. (ECF No. 5-1, at 14–16.) This was enough to satisfy the requirements of due process prior to the revocation of Razo's good time credits. *See Hill*, 472 U.S. at 456.

### IV.

Finding no genuine dispute of material fact and for the reasons stated above, the court will **GRANT** Respondents' motion and dismiss this action. The Clerk is directed send copies of this memorandum opinion and the accompanying order to the parties.

**ENTERED** this 31st day of March, 2025.

*/s/Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[10] Razo does not dispute that the DHO issued a written statement detailing the evidence he relied upon and the reasons for the disciplinary action taken.